# NORTHERN PACIFIC RAILROAD COMPANY, Appellant, *v.* PATTERSON, COUNTY TREASURER, RESPONDENT.

TAXATION — *Pleading* — *Injunction.* — Section 22, page 92, Laws of 15th Extra. Session, provides in substance that the board of county commissioners of each county shall constitute a board for the correction of the assessment roll, and the equalization of assessed value of property, to which any person, feeling aggrieved by any valuation or amount of property listed, may apply for the correction thereof. In an action to restrain by injunction the collection of a tax complained of as erroneous, a complaint which does not aver that the plaintiff sought the redress provided for in said statute, or tendered the amount admitted to be due, is bad on demurrer.

*Appeal from Sixth Judicial District, Gallatin County.*

The demurrer to the complaint was sustained, and judgment rendered for defendant by HENRY, J.

*Cullen, Sanders & Shelton, Armstrong & Hartman,* and *F. M. Dudley,* for Appellant.

The prayer of the complaint is for an order of injunction, directed to the county treasurer, enjoining him from selling the lands described in the complaint, or any portion thereof, for the pretended taxes, and from executing any tax certificate therefor to any person, and that he be forever restrained from collecting said taxes; and that said taxes and tax proceedings be declared void, and be set aside and canceled. It is alleged in the first cause of action in the complaint that the treasurer has advertised the lands described for sale, and threatens and is about to wrongfully sell the same for the non-payment of taxes, and to issue certificates of sale for the same in the form prescribed by the laws of Montana; and that thereby the rights of the plaintiff in and to such lands, and the value thereof, will be greatly impaired; and a multiplicity of suits concerning the title to said lands necessarily occasioned; and thereby a cloud will be cast upon the title to said lands. The demurrer admits each of these allegations to be true. The doctrine is well established that a party is not entitled to relief in equity as a matter of right on a showing of illegality in tax proceedings. It is necessary that he should show in addition that his case

comes under some acknowledged head of equity jurisdiction. (Cooley on Taxation [2d ed.], 760, and cases cited.)   But where lands are not taxable because they have not yet ceased to be a portion of the public domain, or because they are exempt under some State or national statute, equity makes an exception to the general doctrine of non-interference by injunction, and this exception has been so uniformly recognized as to become of itself a governing rule in that class of cases.   And it may be laid down as the established doctrine of the courts, that the attempted enforcement of the tax upon property which has been exempted by proper legislative authority from the burdens of taxation, constitutes a grievance of so irreparable a nature as to merit preventative relief by injunction.   (*Illinois Cent. R. R. Co.* v. *County of McLean,* 17 Ill. 291; *Morris Canal & Banking Co.* v. *Jersey City,* 1 Beasl. 227; *Oliver* v. *Memphis & L. R. R. R. Co.* 30 Ark. 128; *Marguette H. & O. Co.* v. *Marguette,* 35 Mich. 504; *Mobile & G. R. R. Co.* v. *Peebles,* 47 Ala. 317; *Mobile & O. R. R. Co.* v. *Moseley,* 52 Miss. 127; *Missouri R. F. S. & G. R. R. Co.* v. *Morris,* 13 Kan. 302; *Railway Company* v. *McShane,* 22 Wall. 444; S. C. 3 Dill. 303; *Kansas Pac. Ry. Co.* v. *Prescott,* 16 Wall. 603; *Northern Pac. R. R. Co.* v. *Traill County,* 115 U. S. 600; *Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146; 1 High on Injunctions, §§ 530–535; *Dows* v. *Chicago,* 11 Wall. 108.)

The complaint shows conclusively that the lands are not taxable.   They are in substantially the same situation as were the lands of the railroad company involved in the case of *Northern Pac. R. R. Co.* v. *Traill County,* 115 U. S. 600, where the United States Supreme Court sustained injunction as the proper remedy. But the plaintiff has alleged, in addition, and those allegations are taken as true, that the case comes under acknowledged heads of equity jurisprudence.   There is a sufficient allegation of irreparable injury.   If, upon the facts set forth in the complaint, the court can easily see that the injury complained of will be irreparable and irremediable, it is not necessary to set forth that conclusion in so many words.   Irreparable injury to real estate does not mean a mischief which shall destroy its value, but one which shall materially affect its value or use, and which, when done, cannot be repaired by an action for

damages. (*Carroll* v. *Perry*, 4 McLean, 27; *Burnett* v. *Cincinnati*, 3 Ohio, 87; 17 Am. Dec. 582; *Livingstone* v. *Livingstone*, 6 Johns. Ch. 497; 10 Am. Dec. 353; *Mohawk etc. R. R. Co.* v. *Artcher*, 6 Paige, 83; *Union Pac. Ry. Co.* v. *Ryan*, 113 U. S. 516; *Milwaukee* v. *Keoffler*, 116 U. S. 219.)

A second head of equitable jurisdiction is set forth, to wit, that a multiplicity of suits concerning the title to said lands will necessarily be occasioned. This allegation the demurrer also admits. There is no better established doctrine than that equity will take jurisdiction of a case to prevent a multiplicity of suits and grant the appropriate relief. (Cooley on Taxation [2d ed.], 761; 1 Pomeroy's Equity Jurisprudence, §§ 260, 269, 270, and cases cited; *Union Pac. Ry. Co.* v. *Ryan*, 113 U. S. 516; *Dows* v. *Chicago*, 11 Wall. 108; *Hannewinkle* v. *Georgetown*, 15 Wall. 547; *Milwaukee* v. *Koeffler*, 116 U. S. 219.)

A third ground for the interference of a court of equity is also alleged, that, by the proceedings, a cloud will be cast upon the title to said lands. Under the provision of the Revenue Law of Montana the assessment constitutes a cloud upon the title to the land. A lien upon real estate appearing of record, with nothing of record to show but that the same may be enforced, and requiring evidence *aliunde* to defeat it, is a cloud on the title to such real estate. (*Northern Pac. R. R. Co.* v. *Carland*, 5 Mont. 146; *Scofield* v. *Lansing*, 17 Mich. 437; *Union Pac. Ry. Co.* v. *Ryan*, *supra;* 1 High on Injunctions, 524.) The section above referred to does away with the common-law doctrine, that the recitals in a tax deed are not evidence against the owner of the property, but must be proved by evidence *aliunde*, to make the tax deed *prima facie* evidence of title. (*Northern Pac. R. R. Co.* v. *Carland, supra.*) Tax certificates and tax deeds issued in pursuance thereof for the lands described in the complaint, will not be void upon their face. The land is *prima facie* liable to taxation, and evidence *aliunde* must be introduced to show that the land was in fact exempt from taxation, and that the tax deed or certificate is void and a nullity. Such certificate or tax deed then will constitute a cloud upon the title to the land. (*Morris C. & B. Co.* v. *Mayor of Jersey City*, 1 Beasl. 228; *Van Doren* v. *Mayor of New York*, 9 Paige, 389; *Northern Pac. R. R. Co.* v. *Carland*,

*supra; Palmer* v. *Rich,* 12 Mich. 414; *Jenkins* v. *Rock County,* 15 Wis. 11; *Greedup* v. *Franklin County,* 30 Ark. 101; *Mobile G. R. R. Co.* v. *Peebles,* 47 Ala. 317; *Johnson* v. *City of Milwaukee,* 40 Wis. 315; *Fowler* v. *City of St. Joseph,* 37 Mo. 328; *Union Pac. Ry. Co.* v. *Cheyenne,* 113 U. S. 525; Cooley on Taxation [2d ed.], 761, and cases cited; *Earl* v. *Duras,* 13 Neb. 235; *L. & N. R. Co.* v. *Gaines,* 3 Fed. Rep. 282; *State Railroad Tax Cases,* 92 U. S. 614; *Dows* v. *Chicago,* 11 Wall. 108; *Heywood* v. *Buffalo,* 14 N. Y. 534.)

That a court of equity will enjoin the casting of a cloud upon the title in cases where, when the cloud was cast, it would be removed, is well settled. (*Huntington* v. *Central Pac. R. R. Co.* 2 Sawy. 514; *Carroll* v. *Perry,* 4 McLean, 27; *Pettit* v. *Shepherd,* 5 Paige, 501; 28 Am. Dec. 437; Story on Equity Jurisprudence, 8–17; 1 High on Injunctions, §§ 248, 529, and cases cited; Pomeroy's Equity Jurisprudence, § 1345, and cases cited.)

We submit, therefore, that the honorable court erred in vacating the injunction and sustaining the demurrer as to the first cause of action set forth in the plaintiff's complaint.

The questions arising under the second and third causes of action set forth in the complaint are substantially identical, and will be discussed together.

It is conceded by the company that these lands are not exempt from taxation, and the sole question arising with reference to each is, whether the defects in the levy of the taxes are such as to render the taxes void, and entitle the plaintiff to the relief prayed for.

The first defect alleged in each cause of action is, that there was no separate assessment made of the lots and blocks described, but that they were assessed together as one tract of land, making a lump assessment. The provision of the Revenue Law of Montana is mandatory, and a failure to comply with its provisions renders the assessment void and the tax illegal. (Cooley on Taxation [2d ed.], 400, 401; *Hamilton* v. *Fond du Lac,* 25 Wis. 494; *Jennings* v. *Collins,* 99 Mass. 31; 96 Am. Dec. 687; *Hayden* v. *Foster,* 13 Pick. 492; *Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146; *Crane* v. *Janesville,* 20 Wis. 321; *French* v. *Edwards,* 13 Wall. 506;

*Terrill* v. *Groves*, 18 Cal. 149; *Cadwalader* v. *Nash*, 73 Cal. 630; *Shimmin* v. *Inman*, 26 Me. 228; *Willey* v. *Scoville's Lessee*, 9 Ohio, 43; *Elwell* v. *Shaw*, 1 Me. 339; *McQuilkin* v. *Doe*, 8 Blackf. 581; *State* v. *Lafayette County*, 3 Wis. 712; *Spellman* v. *Curtenius*, 12 Ill. 410; *McLauglin* v. *Kain*, 45 Pa. St. 113; 1 Desty on Taxation, 573, 574; *State* v. *Baker*, 49 Tex. 763; *Romig* v. *Lafayette*, 33 Ind. 30; *Bruce* v. *McBee*, 23 Kan. 383; *Huntington* v. *Central Pac. R. R. Co.* 2 Sawy. 503; *Tilton* v. *Oregon Cent. M. Road Co.* 3 Sawy. 22; *Jenkins* v. *Supervisors*, 15 Wis. 11.) The second defect is that the assessor raised the valuation of the lands as returned by the plaintiff, and wrongfully and falsely swore and attached the oath to the assessment roll that the values returned by him in the assessment roll were the same as those made and returned by the company. An omission of an oath, or an oath made and attached to the roll· which does not comply with the law, invalidates the tax. (*Morrill* v. *Taylor*, 6 Neb. 236, 245; *Clark* v. *Crane*, 5 Mich. 151; 71 Am. Dec. 776; *Marsh* v. *Clark County*, 42 Wis. 502; *Van Rensselaer* v. *Witbeck*, 7 N. Y. 517, 521; *Westfall* v. *Preston*, 49 N. Y. 349, 353; *Bradley* v. *Ward*, 58 N. Y. 401, 406; *Silsbee* v. *Stockle*, 44 Mich. 561; *Dickison* v. *Reynolds*, 48 Mich. 158; *Brevoort* v. *City of Brooklyn*, 89 N. Y. 128; *McClure* v. *Warner*, 16 Neb. 447; *McNish* v. *Perrine*, 14 Neb. 582; *Lynam* v. *Anderson*, 9 Neb. 367; *Westbrook* v. *Miller*, 64 Mich. 129; *Shattuck* v. *Bascom*, 105 N. Y. 39; *Smith* v. *Hard*, 59 Vt. 13; *Bundy* v. *Wolcott*, 59 Vt. 665; *Warren* v. *Grand Haven*, 30 Mich. 24; *Grand Rapids* v. *Blakely*, 40 Mich. 367; 29 Am. Rep. 539; *Crooks* v. *Whitford*, 47 Mich. 283; *Griggs* v. *St. Croix Co.* 20 Fed. Rep. 341; *Tunbridge* v. *Smith*, 48 Vt. 648; *Walker* v. *Burlington*, 56 Vt. 131; *Reed* v. *Chandler*, 32 Vt. 285; *Sinclair* v. *Learned*, 51 Mich. 335; *People* v. *Sullivan Co.* 56 N. Y. 253; *Plumer* v. *Marathon Co.* 46 Wis. 179; *Scheiber* v. *Kaehler*, 49 Wis. 291; *Tierney* v. *Union Lumber Co.* 47 Wis. 248; *Marshall* v. *Benson,* 48 Wis. 558; *Rowe* v. *Hulett*, 50 Vt. 643; *Robson* v. *Osborn*, 13 Tex. 299; *Wofford* v. *McKinna*, 23 Tex. 36; 76 Am. Dec. 53; *Davis* v. *Farnes*, 26 Tex. 296; *Matteson* v. *Rosendale*, 37 Wis. 254.) The third defect is, that the county clerk did not make out a tax list setting forth the amount of each different tax upon the lots and

blocks or containing the separate parcels of land. (Cooley on Taxation [2d ed.], 400, 401, 428; *State* v. *Williston,* 20 Wis. 240 [228]; *French* v. *Edwards,* 13 Wall. 506; *People* v. *Sierra Buttes M. Co.* 39 Cal. 511; *Hamilton* v. *Fond du Lac,* 25 Wis. 490; *Shimmin* v. *Inman,* 26 Me. 228; *Barker* v. *Blake,* 36 Me. 433; *Sargent* v. *Bean,* 7 Gray, 125; *Jennings* v. *Collins,* 99 Mass. 29; 96 Am. Dec. 687; *Willey* v. *Scoville,* 9 Ohio, 43; *Farnham* v. *Jones,* 32 Minn. 7; *Hanscom* v. *Hinman,* 30 Mich. 419; *Rayner* v. *Lee,* 20 Mich. 384; *Seymour* v. *Peters,* 67 Mich. 415; 1 Desty on Taxation, 573; *Thayer* v. *Stearns,* 1 Pick. 482; *People* v. *Moore,* 1 Idaho, N. S. 662; *Merrill* v. *Swartz,* 39 Ill. 108; *State* v. *Falkinburge,* 15 N. J. L. 320, 327; *Camden etc. R. R. Co.* v. *Hillegas,* 18 N. J. L. 11; *Case* v. *Dean,* 16 Mich. 12.) The fourth defect alleged is, that the notice of sale given by the county treasurer does not set forth the tax due on each parcel of land after adding penalty and costs of advertising. (Cooley on Taxation [2d ed.], 482; *Washington* v. *Pratt,* 8 Wheat. 681; *Early* v. *Doe,* 16 How. 610; *Moulton* v. *Blaisdell,* 24 Me. 283; *Flint* v. *Sawyer,* 30 Me. 226; *State* v. *Newark,* 36 N. J. L. 288; *Haskell* v. *Bartlett,* 34 Cal. 281; *San Francisco* v. *McCain,* 50 Cal. 210; *People* v. *McCain,* 51 Cal. 360; *Kellogg* v. *McLaughlin,* 8 Ohio, 114; *Westbrook* v. *Willey,* 47 N. Y. 457; *Hiegers* v. *Quinney,* 51 Wis. 62; *Steuart* v. *Meyer,* 54 Md. 454; *Renshaw* v. *Imboden,* 31 La. An. 661; *Pennell* v. *Monroe,* 30 Ark. 661; *Clark* v. *Rowan,* 53 Ala. 400; *Dubuque* v. *Wooton,* 28 Iowa, 571; *Ormsby* v. *Louisville,* 79 Ky. 197; *Sheehy* v. *Hinds,* 27 Minn. 259.)

It must be conceded then, that the tax proceedings set forth in the complaint are illegal, and no valid tax sale can be made thereunder. But the proposition that the plaintiff is not, as a matter of right, entitled to relief in equity on a mere showing of irregularity in tax proceedings is beyond question (unless § 11 of art. viii. of the Constitution has widened the obligation of the court to grant relief upon the mere showing of the illegality of the tax). He must go further, and in addition to such irregularity, show that his case comes under some acknowledged head of equity jurisdiction; and when he has done this, his right to equitable relief cannot be disputed. (Cooley on Taxation [2d ed.], 760.) The complaint does not

rest, however, with merely showing the irregularity in the tax proceedings, but proceeds to show that the cases fall within at least three well recognized heads of equity jurisdiction: *First,* irreparable injury; *second,* multiplicity of suits; and *third,* that by these proceedings a cloud will be cast upon the plaintiff's title. (See authorities cited under head of remedy.)

The doctrine that "he who asks equity must do equity," is not applicable to either the first, second, or third causes of action set forth in the complaint. We concede the proposition that when a party seeks to enjoin the collection of a tax upon the sole ground that, part of the tax being illegal, a cloud will be cast upon his title, it is a condition precedent to his right to relief that he should have paid or tendered that part of the tax which is justly due, and concerning which there is no dispute. But in the case at bar there is no tax justly due, and the plaintiff is entitled to the injunction asked without payment or tender of payment of any portion of the tax. The meaning of the maxim that "he who asks equity must do equity" is that a court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adverse party, and growing out of or necessarily involved in the subject-matter of the controversy. This rule, however, does not authorize the court to impose any arbitrary conditions not warranted by the settled doctrine of equity jurisprudence. The only terms that can be imposed upon the plaintiff under this doctrine must consist of the awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not, perhaps, by those of the common law. The court can only require the plaintiff to give to the defendant that which, by the law of the court, independently of the mere position of the party in the record, is the right of the defendant in respect of the subject of the suit. (Pomeroy's Equity Jurisprudence, §§ 385, 386; *Hanson* v. *Keating,* 4 Hare, 1.)

It follows that the court could only require the plaintiff, as a condition precedent to granting its aid, to pay such tax as was

justly due to the defendant. But if the defendant is not entitled to any tax — if there is, by reason of the defects, no tax justly due, the court cannot compel the plaintiff to pay or tender any tax before granting the relief requested. Thus, if there is a mere informality, irregularity, or defect in the tax proceedings, such as, perhaps, would invalidate a tax title at law, but which would not go to the foundation of the tax, the court could require the plaintiff to pay such tax as was justly due as a condition to its granting the relief asked. But where the defect is more than a mere informality and goes to the foundation of the tax, the whole proceeding is void *ab initio*. No tax whatever is due the defendant, and the plaintiff is entitled to an injunction to restrain collection.

*H. J. Haskell*, Attorney-General, *R. P. Vivion*, County Attorney, and *H. C. Cockrill*, for Respondent.

The reasons advanced for resisting the payment of taxes on the real property in controversy may be conveniently classed under two heads. *First*, that the action of the assessor in lumping the assessment of the town lots *ipso facto* invalidates the assessment thereon. Plaintiff could pay illegal tax and recover it back; no irreparable injury would result, nor multiplicity of suits. (*Dows* v. *City of Chicago*, 11 Wall. 112; *Erskine* v. *Van Arsdale*, 15 Wall. 75.) If plaintiff pay illegal tax, recovery could be had in an action at law, affording adequate and complete remedy. (*Brewer* v. *City of Springfield*, 97 Mass. 154; *County of Cooke* v. *Chicago B. & Q. R. R.* 35 Ill. 466; *Dodd* v. *City of Hartford*, 25 Conn. 235.) Not only the assessor, but the collector has on file in the proper office in Gallatin County a good and sufficient bond, wherein and whereby the plaintiff may, in an action at law, recover from such officers all damages it may sustain, by reason of the alleged wrongful act of either or both. If the tax as assessed is illegal and void, as insisted by appellant, he had an ample remedy at law; could have paid the tax under protest, and recovered it back by a suit at law against the respondent, and appellant has a plain, speedy, and adequate remedy at law. *Second*, that the outlying lands, not being segregated from the public domain, or identified, are not subject to taxation. In *Robinson* v. *Gaar*, 6 Cal. 275, the facts

alleged in the bill were: That said lands were claimed by them as purchaser from Sutter, the original grantee of the Mexican government; that they were not in possession of them; that the title was in litigation between the government of the United States and the plaintiffs. It is clear that if the title to the land is in the plaintiffs, then they are liable for the taxes; if not, they have nothing to do with the matter, and certainly no authority to sue or defend on behalf of the United States. They cannot affirm and deny at the same time; it is either their land or it is not. If the grant under which they claim is either legal or equitable, it is fully protected by the treaty, and a confirmation would relate back to the date of its execution. Should the plaintiffs' position be maintained, and their grant be confirmed, they would escape during the pendency of this litigation one of the burthens which society has imposed upon property. This pretense might, with some plausibility, be set up in every case where the title of property was in litigation in our own courts between private individuals. The plaintiffs are the best judges of their own title, and must determine at their own risk whether it is worth paying taxes on or not. They cannot assert their ownership of the lands and deny the legal consequence of such right.

A court of equity will not interfere to correct an erroneous assessment, and enjoin the collection of taxes thereon.

In *State Railroad Tax Cases,* 92 U. S. 614, Miller, J., says: "Let us suppose that the board of equalization increased the entire assessment on each company without sufficient evidence; in short, let us suppose that in these and many other respects the proceedings were faulty and illegal, does it follow that in every such case a court of equity will restrain the collection of the tax by injunction, or will enjoin the collection of the *whole tax when it is obvious that* in justice *a large part of it should be paid, and if not* paid, that the *complainant escapes taxation* altogether? . . . .

"It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity of themselves, gave the right of an injunction in a court of equity. . . . . We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in

restraining the collection of illegal taxes; but we may say, that, in addition to illegality, hardships, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors or excess in valuation, or hardship or injustice of the law, or *any grievance which can be remedied by a suit at law, either before or after payment of taxes, will not justify* a court of equity to interpose by *injunction* to stay collection of a tax." (Also, *Dows v. City of Chicago*, 11 Wall. 110.)

In *Hannewinkle* v. *Georgetown*, 15 Wall. 548, Hunt, J., says: "There must be an allegation of fraud, or that it creates a cloud upon the title; that there is an apprehension of multiplicity of suits, or some cause presenting a case of equity jurisdiction. . . . . It has been long held, also, that *there exists no cloud* upon the title which justifies the interference of a court of equity, *where the proceedings are void upon their face*, that is, the same record which must be introduced to establish the title claimed, will show that there is no title." (Also, *Purrington* v. *People*, 79 Ill. 13.)

In *Du Page County* v. *Jenks*, 65 Ill. 286, Walker, J., says: "It is with reluctance that chancery stays the collection of the public revenue. It is a branch of equity jurisprudence of very modern introduction and of doubtful expediency. It may be well doubted whether it would not have been better for the public welfare had the parties been left to seek their remedies at law in all cases, as they were, until recently, required to do. The exceptions to the rule are confined almost exclusively to cases where the tax itself is not authorized to be imposed by any laws, or if authorized, only when it is assessed on property exempt from the tax." (Also, *Munson* v. *Miller*, 66 Ill. 383.)

In the case of *Saving and Loan Society* v. *Austin*, 46 Cal. 489, Crockett, J., says: "The allegation that if the sale is allowed to proceed, they may be involved in litigation with the purchasers, is a mere speculation as to probabilities which may or may not occur. *Non constat* that a purchaser will be found, or that there will be more than one, or that the purchaser will claim the benefit of the purchase, or that he will accept, or that the collector will ever execute a deed for the property. If averments of this kind or description are sufficient to authorize

an injunction, the levying of the assessment, and every act performed by the assessor, might be arrested in the same way, on the ground that they were the initiatory steps in a proceeding which might culminate in a sale and sheriff's deed, and thereby ultimately produce litigation, and create a cloud on the title. Probabilities of this kind are too remote to justify the court in interposing by injunction to arrest the collection of the public revenue."

In *De Witt* v. *Hays,* 2 Cal. 470; 56 Am. Dec. 352, Murray, C. J., says: "In the present case, under an allegation of irreparable injury, the plaintiff seeks to avail himself of the writ of injunction. The simple allegation of irreparable injury is not sufficient; it should appear to the court from the facts set forth in the bill." (*Ritter* v. *Patch,* 12 Cal. 299.) The practice of granting writs of injunction in every conceivable case affecting personal and real estate, and restraining persons in the enjoyment of their property, has been carried to a greater extent, perhaps, in this State than any other; so much so as to impair the efficiency and benefits arising from the judicious exercise of this power. These abuses ought to be checked by this court whenever they occur.

BLAKE, C. J.— This action was commenced by the appellant to obtain an injunction to restrain the county treasurer of the county of Gallatin, in this State, from selling certain lands, blocks, and lots, by reason of the taxes which have been levied thereon in the year 1889, or collecting the same, and also a decree that said taxes should be adjudged void.

The complaint alleges that the plaintiff is a corporation under the Act of Congress entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific Coast, by the northern route," and approved July 2, 1864. The second and third sections of this act are set forth, and describe the public lands which are granted to the railroad by the United States. The particular acts of the plaintiff are then alleged, showing that all the conditions of the statute have been performed by the corporation. "The lands described in the schedule marked 'Schedule A' . . . . are situated on and within the distance

of forty miles of the plaintiff's said line of railroad, as the same was so definitely fixed and described in the plat thereof, duly filed with the commissioner of the general land office, as aforesaid, and that said lands are in the county of Gallatin, Montana." It is further alleged that "the lands so granted to said plaintiff, . . . . if any there are, in said county, have never been segregated from the public lands, have never been identified, and that the boundaries . . . . have never been ascertained or determined." It is also alleged that the officers of the United States have "failed and refused to certify said lands . . . . to the plaintiff, or to satisfy any lands in the county of Gallatin to said plaintiff, . . . . but have refused and failed to certify or patent said lands · solely because said lands have not been identified as lands passing to said plaintiff, under said grant, as hereinbefore alleged." It is further alleged: "In the year 1889, the officers of the said county of Gallatin authorized by the laws of the Territory of Montana to assess property therein for the purposes of taxation, and to levy taxes thereon, pretended to assess all the said parcels of land described in the Schedule A . . . . to the said plaintiff for the purposes of taxation, and pretended to levy certain taxes thereon, to wit, the territorial, county, town, and other taxes for that year; . . . . that all the said . . . . taxes were and are illegal and void for the reason that said lands so taxed were exempt from taxation and assessment by the Territory of Montana."

The second cause of action describes certain lots and blocks in the town of Moreland, county aforesaid, and contains the following allegations: "That prior to the first Monday in August, A. D. 1889, said plaintiff furnished a list of said lots under oath, as required by law, to the assessor of said Gallatin County; that said assessor did not assess said lots and blocks of land as required by law, and did not determine and fix the true value of such lots and blocks, and enter or cause to be entered the same opposite such lots and blocks, as required by law, but assessed and valued all of said lots and blocks together as one parcel of land; that said assessor did not assess said lands at the valuation returned by said plaintiff, but increased the same, and did not place upon said assessment roll the valuation of said lots and blocks as returned by said plaintiff; but

said assessor did wrongfully and falsely take and subscribe an oath, and attach the same to the said assessment roll, wherein and whereby said assessor did swear that the value of said property was returned in said assessment roll as set forth in said statement made and returned to said assessor by said plaintiff."

The third cause of action relates to certain lots and blocks of land in the town of Gallatin, county aforesaid, which are described in Schedule C. The other allegations are similar to those which have been recited respecting the second cause of action. It is also alleged that the county treasurer, the respondent, has advertised the foregoing lands, blocks, and lots for sale, through the failure of the appellant to pay said taxes. A demurrer to each cause of action was sustained by the court below, and judgment was afterwards entered against the plaintiff.

The statute which was in force when the assessments that are complained of were made provides as follows: "Sec. 22. The board of county commissioners of each county shall constitute a board for the correction of the assessment roll and the equalization of the assessed value of property, and on the third Monday in the month of September of each year said board shall meet at the office of the county clerk at the county seat, and may adjourn from time to time as deemed necessary. Public notice of the time and place of the meeting of said board shall be given by the county clerk by publication for, at least, two successive weeks in a newspaper published in said county, if there be one; otherwise, by notices posted in five public places immediately prior to the meeting of said board of equalization; but no notice of an adjourned meeting of said board shall be required. Any person feeling aggrieved by any valuation or amount of property listed, or by any other fact appearing on such assessment, may apply to such board for the correction thereof; and if, in the opinion of said board, any valuation is too high or too low, as compared with other valuations by the assessor of similar classes of property, it may equalize the same; but if such valuation results in any increase, the party affected thereby shall be given reasonable notice of the intention to increase such valuation, with opportunity to appear, which notice may be sent by mail, with postage thereon prepaid." (Stats. 15th Ex. Sess. p. 92.)

It appears from the transcript that the plaintiff elected to stand upon its complaint, and declined to amend the same, when the demurrers were sustained. We must assume that every fact which is material to its demand for equitable relief has been pleaded. It is clearly shown that the appellant never applied to the board of equalization, created by the statute, for any redress, or sought any remedy, until this action was commenced, February 17, 1890. The brief of the appellant considers the propositions relating to the lots and blocks in the towns of Moreland and Gallatin, and says: "It is conceded by the company that these lands are not exempt from taxation, and the sole question arising with reference to each is, whether the defects in the levy of the taxes are such as to render the taxes void, and entitle the plaintiff to the relief prayed for." The complaint does not allege that the appellant has paid or tendered any sum of money to meet its liability to taxation upon the property to which the title is admitted. The discussion has embraced matters of national as well as local importance concerning the effect of the Act of Congress incorporating the appellant, and the ownership of the lands mentioned in Schedule A, but we do not express an opinion thereon. The determination of one inquiry regarding the sufficiency of the complaint restricts this investigation.

In *German Nat. Bank* v. *Kimball*, 103 U. S. 732, Mr. Justice Miller says: "We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; and that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of the government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few dollars more than it ought to be; but that before he asks this exact and scrupu-

lous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder. (*State Railroad Tax Cases,* 92 U. S. 575.) This bill attempts to evade this rule by alleging that the tax is wholly void, and therefore none of it ought to be paid." The case of *Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146, was brought by the plaintiff in this action to restrain the county treasurer of Custer County from collecting a tax which had been assessed upon "twenty miles of railroad and rolling stock." The complaint conformed to the doctrine of *German Nat. Bank* v. *Kimball, supra,* and alleged that the tax upon the personal property of the corporation had been paid, and "that the plaintiff, before the commencement of this action, appraised at its true value the rolling stock on said twenty miles of road, and has tendered to the defendant the taxes thereon, amounting to the sum of four hundred and forty dollars, and brings the money into court." (P. 153.) Upon this ground alone we can sustain the ruling of the court below upon the demurrer to the second and third causes of action. If we concede the position of the appellant that the lands which are described in the Schedule A are not subject to taxation, and that it cannot be required to pay or tender any sum of money in payment of any tax thereon, we assert that the statute, *supra,* has prescribed an ample legal remedy, which must be exhausted before the equitable powers of the court are resorted to. We have seen that no action of this nature has been had before the board of equalization of the county of Gallatin, and this statutory proceeding has been ignored. A reference to the authorities leads to the conclusion that this conduct of the appellant compels us to decide adversely to its appeal.

In *Dundee etc. Investment Co.* v. *Charlton,* 13 Sawy. 25, Mr. Justice Deady said: "But on the hearing the defendant made the objection that, conceding the error an injustice of the assessor, the remedy of the plaintiff in the first instance was an appeal to the county board of equalization to correct the same, and that, unless it appears that it has resorted to this means of redress without avail, it cannot have relief in a court of equity. . . . . But the plaintiff having neglected to avail itself of this means of redress cannot maintain a suit for relief in this court.

It is no excuse for this neglect that the board of equalization, as well as the assessor, were committed to the rule of taxing mortgages, which were generally owned by non-residents, at their face or cash value, and the property in lands, which generally belonged to residents of the county, at much less than such value. Notwithstanding this, it was the duty of the plaintiff, if dissatisfied with the assessment, to pursue the mode prescribed by the statute relating to assessments for its correction, when, if it failed, it might have taken the matter before the Circuit Court of the State on a writ of review (*Rhea* v. *Umatilla Co.* 2 Or. 298), or brought this suit to restrain the county from collecting the illegal portion of the tax."

In *Bourne* v. *Boston*, 2 Gray, 494, Mr. Justice Bigelow says: "The plaintiff was not legally taxable for the property held by him as trustee, but he was taxable for the property of his ward in the city of Boston, and therefore a portion of the tax which in this action he seeks to recover back was rightly assessed to him. This would seem to bring the case within the principle, now well settled by the authorities, that where a person is liable to taxation for personal and real estate in a city or town, his sole remedy, for an overtaxation caused by an excessive valuation of his property, or by including in the assessment property of which he is not the owner, or for which he is not liable to taxation, is by an application to the assessors for an abatement." In *Rio Grande R. R. Co.* v. *Scanlan*, 44 Tex. 649, Mr. Justice Moore in the opinion says: "But if the law was in force, and appellant's property was being assessed under it, from the petition it does not appear that the appellant had taken the proper steps to secure a correction of the assessment if it was erroneous or excessive, or had placed itself in the proper attitude to ask the interposition of a court of equity for relief if it was in danger of suffering injury therefrom. Although the tax may have been illegally assessed, and the action of the sheriff in collecting it unauthorized, it does not follow that a court of equity will in all instances interpose to stay his action. A party asking for this extraordinary relief must have used all proper means to obviate the necessity of appealing to the court, and must not himself be in default." In *O'Neal* v. *Virginia & M. Bridge Co.* 18 Md. 1; 79 Am. Dec. 669, the court says: "The

ground of the equity is that the property is not taxable at all, and that the assessment had not been made and returned according to law. . . . . The answer shows that they had knowledge of the assessment, and no reason is assigned for their not going before the commissioners to have the supposed 'errors corrected. . . . . We have no power to make the correction for the benefit of the public, which the commissioners might have done, and, if the courts of equity were to interfere in such cases, parties taxed, instead of going before the proper tribunal to have errors corrected, and thereby, while protecting themselves, secure to the State or county their just demands against the property, would wait until the time had elapsed, and then by proceeding in equity escape altogether."

Mr. High, in his work on Injunctions, says: "The fundamental principle applicable to such cases is that a court of equity is not a court of errors to review the acts of public officers in the assessment and collection of taxes, nor will it revise their *decision upon matters within their discretion, if they have acted* honestly. Where, therefore, a particular manner is provided by law, or a particular tribunal is designated for the settlement and decision of all errors or irregularities on behalf of persons dissatisfied with a tax, they must avail themselves of the legal remedies thus prescribed, and will not be allowed to waive such relief and seek in equity to enjoin the collection of the tax. And this upon the ground that where one has a complete and ample remedy at law, and slumbers upon his rights, he is estopped from invoking the aid of equity." (Vol. 1 [2d ed.], § 493, and cases cited. See, also, *Stanley* v. *Supervisors*, 121 U. S. 535; *Palmer* v. *McMahon*, 133 U. S. 660; *Merrill* v. *Gorham*, 6 Cal. 41; *Oregon etc. Bank* v. *Jordan*, 16 Or. 113; *Stewart* v. *Maple*, 70 Pa. St. 221; *Brooks* v. *Shelton*, 47 Miss. 243; *Davis* v. *Macy*, 124 Mass. 193; *Preston* v. *Johnson*, 104 Ill. 625; *Tripp* v. *Merchants' Mut. Ins. Co.* 12 R. I. 435; Cooley on Taxation, 527–529; 2 Desty on Taxation, 661–663.) In *Northern Pac. R. R. Co.* v. *Carland, supra,* it is stated that the corporation "applied to the board of county commissioners of said county at their December session, 1881, to remit the tax" complained of, "which the board refused to do."

It is apparent that the complaint in that case contained the

allegations which are necessary and proper according to the principles laid down in the authorities *supra,* and therefore this court held that the appellant was entitled to the equitable remedy which was prayed for.   And it is equally clear that the case at bar does not fall within the doctrine which has been upheld, and that the complaint lacks the essential averments which require courts to interpose the writ of injunction.

The judgment is therefore affirmed, with costs.

HARWOOD, J., and DE WITT, J., concur.