JAMES R. SMITH, plaintiff in error, *vs.* A. W. JONES, defendant in error.

1. The Mayor and Council of the City of Griffin have power conferred by the charter to levy and collect a tax, and in case of non-payment the clerk of the city may issue execution against the defaulter, which is a lien upon all his property, and may be levied upon any property of the defendant, real or personal, sufficient to satisfy the *fi. fa.*, by the marshal or his deputy, who may sell the same at public sale at the city hall, giving such notice as is required by law for tax collectors' sales.
2. The marshal is not bound to make an entry of no personal property before he can levy upon real property. Both are alike subject.

Claim. Equitable Mortgage. Tax Sales. Before Judge GREEN. Spalding Superior Court, August Term, 1869.

On the 15th of February, 1868, Jones obtained a judgment against one Gullett for $386 84, besides interest and costs. The *fi. fa.* issued upon this judgment was, on the 28th of January, 1869, levied upon a house and lot in Griffin as Gullett's property. Smith, by Patterson as his agent, claimed the property. On the trial Jones' attorney read in evidence the *fi. fa.* and levy, proved that Gullett was in possession of the property after the date of said judgment, had a deed to it, and had paid $2,200 00 for it, and then closed.

Claimant's attorneys read in evidence a fee simple deed for said premises from Gullett, to Bailey, made the 22d of March, 1867, for the expressed consideration of $1,100 00 ; a quit claim deed from Bailey to Smith, made the 15th of December, 1868, for the expressed consideration of $1,300 00 as one chain of title. To make another chain they introduced a *fi. fa.*, issued by the city clerk of Griffin, "to L. L. Bloodworth, City Marshal," commanding him of the goods, chattels, lands and tenements of said Gullett, to make $15 00 and costs for Gullett's tax for 1866. The only entries on said *fi. fa.* were a levy on said house and lot, made the 1st of October, 1867, by John L. Doyal, deputy marshal of Griffin, and a return by him dated 7th November, 1867, stating that on the 1st Tuesday in November, 1867, at public sale, he sold said property to said Bailey at $20 50, and made Bailey

a deed. They read the deed to Bailey, which was in the usual form, containing the usual recitals as to advertisements, etc., and signed by said Doyal as acting chief marshal.

They also read in evidence a tax *fi. fa.*, issued by the tax collector of said county, for $1,000 00, against Gullett, dated 16th of March, 1867, for taxes due for selling lottery tickets; it had been levied on said premises on the 23d of March, 1867, and on it was a receipt, showing that Patterson had paid the costs, and they read a tax *fi. fa.* against Gullett for $34 00 for taxes due to the State for 1857, which, in consideration of $17 00, the tax collector transferred to Patterson.

In rebuttal, Bailey was examined. He testified that Gullett wished to borrow $1,000 00, to go into a speculation of $10,000 00 or $12,000 00, and offered to secure it by a mortgage on said lot. Bailey refused to take a mortgage, because it was troublesome to foreclose, but finally agreed to let Gullett have $1,000 00 for ninety days if Gullett would give him an absolute deed to said premises, and Bailey should give Gullett a paper, stating that if Gullett repaid the money in ninety days he would return Gullett the deed, and if he, Gullett, failed so to pay him, the deed was to be absolute. Pursuant to that said deed was made, and it, with Gullett's note, was delivered to Bailey, and he gave the paper promising as aforesaid. About four months or more after said contract was made, Gullett, having no place to carry his family, and not having paid any of the borrowed money, gave up to Bailey said paper, in presence of witnesses, surrendered possession of the premises to Bailey, and gave Bailey his notes for rent. Bailey then told him that if he would pay said money he would let his family have the premises, and Bailey kept the note on Gullett. Gullett failed to pay the rent, and when Bailey sought to evict him he enjoined Bailey; this injunction was pending, and said Patterson, as agent for Gullett, was in possession of the premises when Bailey sold to Smith. Bailey swore further, that while he regarded his title as good, he let the property sell for city taxes, and bought it to strengthen his title; that to avoid litigation he sold the property to Smith for $1,300 00, and gave up to him said

Smith *vs.* Jones.

original note and said rent notes on Gullett. It was shown that at the date of said levy on the tax *fi. fa.*, Gullett had personal property, to-wit: furniture part of which was parlor furniture worth $200 00, and that the lot was two acres in Griffin, and worth $3,000 00; that the marshal was sick for some time, and had resigned before the sale, and therefore his deputy acted in this matter. It appeared that Gullett's bill against Bailey was dismissed when Bailey sold to Smith, and after that Patterson acted as Smith's agent, and it was shown that the tax *fi. fa.* for $1,000 00 was, by order of the Inferior Court, settled upon said payment by Patterson. Claimant's counsel requested the Court to charge, that if, before plaintiff's judgment was obtained, Bailey had taken up his obligation to surrender Gullett's deed, and Gullett had become Bailey's tenant, this paid Gullett's note, and made Bailey's title absolute; that if the property was sold by an officer authorized to sell it, under a tax *fi. fa.* against Gullett, and Bailey bought it, he got all of Gullett's title therein, even though Bailey's original deed, under the circumstances, was but a mortgage, and in either event the property was not subject.

The Court did not so charge, but charged the jury that if the relation of debtor and creditor remained, then the conveyance to Bailey was but a mortgage, and it passed no title to Bailey; that land can not be sold for taxes where there is sufficient personal property to pay the taxes, and that in selling land for taxes the officer can sell only enough of it to pay the tax; that if Gullett had sufficient personal property to pay the tax, the levy on the land and sale of it were void, and passed no title to the purchaser.

The jury found the property subject to Jones' *fi. fa.* The refusal to charge as requested, and the charge as given, are assigned as erroneous.

SPEER & BECK, DOYAL & NUNNALLY, for plaintiff in error.

PEEPLES & STEWART, BOYNTON & DISMUKE, for defendant, replied that Bailey's deed from Gullett was but a mort-

gage: Adams' Eq., marg., p. 111, 2 note; 11 Howard R., 139; 5 Mass. R., 109; 8th Mass. R., 159; 9 Wheat. R., 489; 7 Watts, 401; 8 Paige, 243; 1 San. Ch. R., 58. Personalty must be exhausted before land can be sold for taxes: Cobb's N. D., 1048. Only a sufficiency of land can be sold: Ib. Though the Court erred the verdict is right: 26th Ga. R., 171; 30th, 560.

BROWN, C. J.

We are satisfied the Court erred in its charge to the jury on the trial of this case, when they were instructed that lands can not be sold for taxes by authority of the city when there is personal property subject and sufficient to pay the taxes. The Act amendatory of the charter of the city, passed 18th February, 1854, confers the power of taxation, and provides that the Clerk of the City Council shall issue execution against defaulters, which execution shall bind *all* the property of the defendant from the date thereof; and the marshal is authorized to proceed to levy, advertise and sell in such manner as the ordinances of said city shall or may direct. By the Act of 13th December, 1859, further amending the charter, it is enacted that the Mayor and Council, or a majority of them, shall have the power to levy and collect a tax upon all and every species of property, real and personal, within the limits of the city, which is or may be subject to taxation by the laws of this State, not exceeding fifty cents in every one hundred dollars value of said property. The 22d section of this Act forbids the city authorities to pass any ordinance, rule or regulation, contravening the laws of this State or the Constitution thereof, but as often as any doubts shall arise in the construction of this Act the same shall in all Courts of Law and Equity, and elsewhere, be construed and taken most favorably for said corporation.

But it is insisted that the marshal must make a return on the *fi. fa.* of no personal property before he is authorized to levy on land, because such is the rule in case of sales under a State tax-collector's *fi. fa.* We do not so understand the Code. By section 980 all such *fi. fas.* are required to be

Smith *vs.* Jones.

directed to all and singular the sheriffs and constables of this State. Section 891 declares that executions may be levied by either of the officers to whom directed, or other officer who by law may be authorized in their place; when the principal amount does not exceed $50 00, the levy and sale must be made by a constable, and not otherwise. If the constable levies on land it must be returned to, and sold by, the sheriff of the county.

It will be observed that this section of the Code makes no distinction between real and personal property, except that the land, if levied upon, must be sold by the sheriff, and not by the constable making the levy. And it must be remembered that the *fi. fa.* is directed not to the constable alone, but to all and singular the sheriffs and constables of this State. Now, if it is the policy of this State to require the personal property which is subject, to be first exhausted, before a levy is made on land, why does not the policy extend as well to sums over as under fifty dollars? We see no good reason for the distinction; and if none is made, and the construction insisted upon is adopted, it follows that the *sheriff* can not levy on real estate until he has made a return of no personal property.

Counsel for the defendant in error cites section 893 of the Code, which says, sales under tax *fi. fas.* shall be made under the same rules governing other judicial sales; and he insists, as a constable must make an entry of no personal property on a *fi. fa.* from a Justice's Court, before he can levy on real estate, that this section makes it necessary that the same entry be made by him on a tax *fi. fa.* But this rule of construction proves too much, as it would also require the sheriff to make a similar return, as the same *fi. fa.* is directed to him as well as to the constable, and either may levy it, in case the amount exceeds fifty dollars. It can not be the true meaning of the statute that a constable must make the entry contended for, if the *fi. fa.* levied by him is less than fifty dollars, but need not do so if it exceeds that sum. We think section 893 means by the phrase "the same rules governing other judicial sales," the rules as to advertisements, time and place of sales, etc.

It was also insisted that the deputy or acting marshal of the City of Griffin had no right to make the levy or sale, but that it could only be done by the chief marshal. By reference to the Ordinances of the City, in the Revised Edition of 1869, section 16, under the head of chief marshal and deputy marshal, we find that, when the chief marshal *or deputy* marshal, as collector, shall levy on the goods, chattels, lands or tenements of a tax-defaulter, he shall sell the same at public sale, etc. Here the authority seems to be expressly conferred upon the chief marshal or deputy marshal. Again, section 2, under the same title, declares that it shall be the duty of the chief marshal and deputy marshal to serve *all* processes, *executions*, attachments, etc. And a fee of fifty cents is allowed for collecting executions without levy. It is very clear, therefore, that the authority is expressly given to the deputy marshal to act in such cases. But if it were not given in express terms, we think there would still be no doubt of the power of the chief marshal to discharge this duty by his deputy, and that the maxim *qui facit per alium facit per se,* is applicable.

It is further objected to this sale that the levy was excessive, that it was the duty of the marshal to have put up part of the lot at a time till the necessary sum was raised. We do not think that rule applies to such a case as this. Here the property levied upon was a city lot, not very susceptible of division, as the building probably constituted its chief value; and it was encumbered by a mortgage, to a large proportion of its value, *or* it was claimed by another person, Mr. Bailey, who had a better title than the defendant from whom the tax was due. In either case, it was doubtful, as the result showed, whether it would bring more than the tax due, when sold subject to Bailey's title, whether a fee simple or a mortgage lien.

The view we take of this sale renders it unnecessary in the opinion of the majority of the Court, that we should decide whether the conveyance to Bailey was a mortgage or a conditional sale. For myself I incline strongly to the opinion, upon the authority of *Galt vs. Jackson, 9th Georgia,* 151,

and other authorities cited by the plaintiff in error, that it was a conditional sale, and not a mortgage.   I admit that in some of its features it resembled a mortgage, and that the Courts incline, in a doubtful case, to construe it as a mortgage, and not a sale.   The true test is, did the relation of debtor and creditor still exist between Gullett and Bailey? It seems to me it did not.   After the time when the money was to have been repaid by Gullett to entitle him to a re-conveyance, he gave up to Bailey the defeasance which he took at the time of the sale, and acknowledged himself to be Bailey's tenant, and Bailey accepted him as such.   Suppose the next day the house had been consumed by fire, and the property had been no longer worth one-half the sum which Bailey paid for it, could he have sued Gullett on the notes or debt, and have compelled him to pay the balance or the difference between the value of the lot and the amount of the original sum advanced?   I think not.   It seems to me Gullett could have met him with a successful defense, by showing that the title was fully vested in him at the time the premises were destroyed, and that the relation of landlord and tenant, and not that of debtor and creditor, existed at the time of the loss.   But I will not enlarge, as we do not find it necessary to decide this point.

Judgment reversed.