WARD ET AL., APPELLANTS, *v.* BOARD OF COM-
MISSIONERS OF GALLATIN COUNTY ET AL.,
RESPONDENTS.

[Submitted November 14, 1891.   Decided March 28, 1892.]

TAXATION— *Action to set aside tax sale— Pleading.* — A complaint in an action to set aside a tax sale of lands sold for a certain sum, a portion of which is claimed to be excessive as embracing an item of personal tax, is not demurrable as ambiguous or uncertain in failing to state the excessive portion where the precise amount can be ascertained by computation.

SAME— *Assessment— Validity— Dollar mark.* — The omission of the dollar mark from the figures contained in the column of values in an assessment roll is an informality which does not vitiate the assessment, where the meaning of the numerals is indicated by the position of the figures or other facts.

SAME— *Form of assessment— Equity.* — Where the complaint in such case alleged that plaintiffs' real estate consisted of two distinct parcels, but did not aver that they so returned the same in their list to the assessor, they cannot be heard to complain that the property was listed as a whole. Plaintiffs could have obtained an adequate remedy on account of such irregularity by appearing before the board for the correction of the assessment roll. (*Northern Pacific R. R. Co.* v. *Patterson,* 10 Mont. 90, cited.)

SAME— *Collection of tax.* — Under the statutes in force in 1889 the county treasurer as collector of taxes was not required to seize and sell the personal property of a delinquent tax-payer, or to sue for the tax, before proceeding to sell the real estate assessed to such delinquent.

SAME— *Sale of lands for personal tax.* — The statutes in force in 1889, regulating taxation, contemplated the assessment of each distinct parcel of real estate separately, and created a direct lien on each parcel only for the tax levied thereon, and the lands of a delinquent tax-payer were not chargeable thereunder with a direct lien for a personalty tax.

*Appeal from Ninth Judicial District, Gallatin County.*

Action to set aside tax sale. Defendants' demurrer was sustained and judgment entered in their favor by ARMSTRONG, J.

*Luce & Luce,* for Appellants.

There is no uncertainty in the complaint. From the facts alleged it is but a question of mathematics to ascertain what is the amount claimed as due for taxes on personal property, and penalties thereon. (*Sullivan* v. *Dunphy,* 4 Mont. 499; *Chumasero* v. *Potts,* 2 Mont. 281; *Daniels* v. *Andes Ins. Co.* 2 Mont. 78; *United States* v. *Williams,* 6 Mont. 379–386; *Nichols* v. *Dobbins,* 2 Mont. 540; *Salmon* v. *Wilson,* 41 Cal. 595; *Roysdon* v. *Carr,* 63 Cal. 191; 1 Boone on Code Pleading, § 54, n. 2; 2 Estee's Pleadings, § 3070; § 119, Code Civ. Proc.)

The first question raised upon the face of the complaint is, "did the assessor of said county in the year 1889 determine or fix the value of said parcels of land and the value of said personal property separately?" While it is the duty of every citizen to contribute his just proportion of the expenses of government, still, in the collection of taxes, and particularly in the forfeiture of property, it is the duty of the executive officers to see that every step in the enforcement of the tax, from the beginning of the proceedings to the final culmination thereof, is taken in the manner prescribed by law. (Cooley on Taxation [2d ed.], p. 285; *French* v. *Edwards,* 13 Wall. 506; *Davis* v. *Farnes,* 26 Tex. 296.) After listing property for taxes it is the duty of the assessor to determine and fix the true value of all items of property included in such statement. (§ 5, p. 223, 16th Sess.) This is alleged not to have been done. On the first Monday of September annually the assessor was required to make out and deliver to the county clerk an assessment roll, containing the names of the persons in whose names property was listed, with the several species of property and the value thereof. (§ 18, p. 91, Acts 15th Extra Sess. 1887.) It will be observed: *First.* That in the columns of value there is nothing designating what is meant by the figures therein. *Second.* That there are two separate and distinct parcels of land, at least two miles apart, which are not separately valued, if valued at all, but assessed in a lump, and nothing to show what the assessment was. Figures without designation of value or denomination of dollars and cents do not fix any valuation, and the assessment is void. (*Hurlbutt* v. *Butenop,* 27 Cal. 50, 57, 58; *Braly* v. *Seaman,* 30 Cal. 611; *People* v. *Hastings,* 34 Cal. 571; *People* v. *McCreery,* 34 Cal. 434–437; *Garwood* v. *Hastings,* 38 Cal. 217–224; *Houghton* v. *Austin,* 47 Cal. 664; *People* v. *San Francisco Savings Union,* 31 Cal. 132; *Woods* v. *Freeman,* 1 Wall. 398; *Lawrence* v. *Fast,* 20 Ill. 340; 71 Am. Dec. 274; *Lane* v. *Bommelmann,* 21 Ill. 147; *Eppinger* v. *Kirby,* 23 Ill. 523; 76 Am. Dec. 709; *Tilton* v. *Oregon C. M. R. Co.* 3 Sawy. 22; *Gibson* v. *Chicago,* 22 Ill. 572; *Randolph* v. *Metcalf,* 6 Cold. 400–408; *Coombs* v. *O'Neill,* 1 McAr. 405. See, also, repealed sections 1737, 1738, Comp. Stats. p. 1133.) The assessment of separate lots or parcels of land in

gross is invalid. (*Terrill* v. *Groves*, 18 Cal. 149; affirmed in *People* v. *Clunie*, 70 Cal. 504; *People* v. *Hollister*, 47 Cal. 408; *Crane* v. *City of Janesville*, 20 Wis. 305; *Jenkins* v. *Board of Supervisors*, 15 Wis. 12; *Myrick* v. *City of La Crosse*, 17 Wis. 442; *Mitchell* v. *City of Milwaukee*, 18 Wis. 92; *People* v. *Sierra Buttes Min. Co.* 39 Cal. 511; Cooley on Taxation [2d ed.], 400, 401, and cases cited; Blackwell on Tax Titles [5th ed], §§ 279, 280.) This is not a mere irregularity which can be overlooked. (Cooley on Taxation, 400; *Hamilton* v. *Fond du Lac*, 25 Wis. 490; Blackwell on Tax Titles, *supra*.) All acts required to be performed before the levy of a tax must be strictly performed as conditions precedent to the power to levy. (*People* v. *Castro*, 39 Cal. 65; *Reily* v. *Lancaster*, 39 Cal. 354; *Hewes* v. *Reis*, 40 Cal. 255; *People* v. *White*, 47 Cal. 616; *People* v. *Stockton C. R. R. Co.* 49 Cal. 414.) Without a valid assessment all proceedings are nullities. (*Lake Co.* v. *Sulphur Bank Q. M. Co.* 66 Cal. 17; *Moss* v. *Shear*, 25 Cal. 38, 46, 47; 85 Am. Dec. 94; Cooley on Taxation [2d ed.], 352, 353, and numerous cases cited.) A statute that cures irregularities cannot cure this defect of jurisdiction. (*McReynolds* v. *Longenberger*, 57 Pa. St. 13.) Illegal assessment creates no lien or liability. (*People* v. *Pearis*, 37 Cal. 260.)

There being no valuation or valid assessment there was no jurisdiction in the county commissioners to levy a tax, and therefore no valid levy was made and no tax became due or payable from the plaintiffs. "Every tax levied under the provisions of this act is hereby made a lien against any and all the property assessed, and such lien shall attach at the time of such assessment and shall not be satisfied or removed until such taxes are paid." (§ 2, p. 83, Act 15th Extra Sess. 1887.) Unless lien is given land cannot be sold and lien is but an incident to the tax. (Cooley on Taxation, p. 454; *San Francisco* v. *Jones*, 20 Fed. Rep. 188.) Now, while this lien is created and provision made for the sale of land for taxes, where all the precedent proceedings are regular and valid, still the treasurer must exhaust the other remedies provided by law before proceeding against the real estate. It is the duty of the treasurer "immediately after the first day of January to seize any personal property belonging to, or which may have been assessed to any tax-payer who

shall then be delinquent, and sell the same as provided by law."
(§ 9, p. 225, 16th Sess. 1889.)    And in cases where sufficient
personal property liable to seizure cannot be found to pay the
tax assessed against any *person* or *company*, the treasurer can
sue for and collect such tax by attachment, garnishment, or
otherwise.    (§ 28, p. 93, 15th Extra Sess. 1887.)    Until the
remedy against the personal property is first exhausted, no
authority exists to go further.    And where the tax collector is
required to make collection by distress and sale of goods, there
should be showing of diligent search for goods, etc.    (Cooley
on Taxation [2d ed], 454, and cases cited; Blackwell on Tax
Titles [5th ed], §§ 340, 341, 342.)    The sale of the real estate
under the circumstances related in the complaint is void, and
equity will restrain the deed.    (Blackwell on Tax Titles [5th
ed], § 342.)    Land under our statute is only liable for the taxes
unpaid upon *it*, the land itself.    (§ 29, p. 93, 15th Extra Sess.
1887.)    By no torture of language can it be construed to be lia-
ble for any other tax than that actually due upon it.    Not only
that, but each parcel of land is only liable for the tax due upon
the parcel itself.    (§§ 34, 35, 36, 37, pp. 95, 96, 15th Sess. Acts,
1887; Blackwell on Tax Titles [5th ed], §§ 396, 416, 422, 424.)

Each parcel is chargeable with its own taxes, and it is to be
redeemed by paying them; but such a joint sale charges it with
the taxes upon the others also, and is like issuing one execution
upon several judgments and selling jointly the lands which are
charged with the separate liens.    (Cooley on Taxation [2d ed.],
494; *Hall* v. *Dodge,* 18 Kan. 277; *Mathews* v. *Buckingham,*
22 Kan. 166; *Hayden* v. *Foster,* 13 Pick. 492; *Ballance* v.
*Forsyth,* 13 How. 18; Cooley on Taxation [2d ed.], 493, and
cases cited; *Penn* v. *Clemans,* 19 Iowa, 372; *Ware* v. *Thompson,*
29 Iowa, 65; *Nason* v. *Ricker,* 63 Me. 382; *Jenkins* v. *Super-
visors,* 15 Wis. 11; Blackwell on Tax Titles [5th ed.], §§ 525–
532, and cases cited.)    The whole of the land or interest sold
must be liable for the whole of the taxes for which it is sold,
or the sale is void.    (Blackwell on Tax Titles [5th ed.], §§ 518,
519, 520, and cases cited.)    A sale for a sum in excess of tax
and costs is void, unless excess is less than the smallest frac-
tional coin authorized by law.    (*Treadwell* v. *Patterson,* 51 Cal.
637; *Harper* v. *Rowe,* 53 Cal. 233.)    A sale for taxes assessed

jointly on real and personal property is void. (*Stark* v. *Shupp*, 142 Pa. St. 399. See generally § 522, Blackwell on Tax Titles [5th ed.], and cases cited.) The officer who makes the sale sells something he does not own, and which he can have no authority to sell except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action and which under the law are conditions to his authority. If one of these fail it is as fatal as if all failed. (Cooley on Taxation [2d ed.], pp. 469, 470; *Guisebert* v. *Etchison*, 51 Md. 478; *Dane* v. *Glennon*, 72 Ala. 160; *Brown* v. *Veazie*, 25 Me. 359–362. See also cases cited in notes 1 and 2, p. 471, Cooley on Taxation, 2d ed.)

*H. C. Cockrill*, for Respondent.

Plaintiffs contend that there is nothing in the column of values to indicate what is meant by the figures therein. In other words, that the dollar mark is absent from the column of values, or that it should be there, in order that the figures therein have any meaning. It must be conceded that there is much of authority apparently in support of this view, to be found especially, if not exclusively, in the decisions of Illinois and of California. Plaintiffs cite numerous cases from the decisions of both of these States, and none from any other. In *Lawrence* v. *Fast*, 20 Ill. 338; 71 Am. Dec. 274, the decision was by a divided court, Breese, J., dissenting, and upon grounds which seem to us to present much the more reasonable view, viz.: "That it is certain to every ordinary intent that the figures in the proper columns indicate dollars or dollars and cents, and the most common man would so understand them, and would not be misled by them." The later Illinois decisions, and the California decisions, as we construe them, are based mainly on *Lawrence* v. *Fast, supra*, and on local statutes. The decisions in those States have not been uniform. The cases of *Chickering* v. *Faile*, 38 Ill. 342, and of *Elston* v. *Kennicott*, 46 Ill. 202, are referred to as showing this conflict. *Woods* v. *Freeman*, 1 Wall. 398, cited by plaintiffs, we understand to be based expressly on the construction of an Illinois statute as given to it by the Supreme Court of that State.

In *State* v. *Eureka Con. Min. Co.* 8 Nev. 28, the Supreme

Court of Nevada says: "The fair and reasonable presumption, in the absence of anything in such roll [assessor's] to show to the contrary, is that the figures in the smaller subdivision of columns indicate cents, and those in the larger, dollars. The addition of the dollar ($) mark would make this more apparent. . . . . Upon authority it cannot be claimed that either doctrine (for or against validity of assessment roll in which there is no dollar mark) has become settled law by the rule of *stare decisis;* or that against our sense of right, we are bound to follow these recent and not altogether consistent or harmonious adjudications of two of our sister States, and perhaps the most that can be claimed is a conflict." The numerals referred to in the columns of value could not reasonably be supposed to have any other meaning than dollars and cents — the only money or measure of account known to American business or finance.

Plaintiffs should have exercised their statutory right of applying to the county board of equalization "for the correction of any valuation or amount of property listed, or any other fact appearing on such assessment roll." (*Northern Pac. R. R. Co.* v. *Patterson,* 10 Mont. 90.) The plaintiffs do not allege that they ever in any manner exercised this statutory right. It is not contended that any of the property was exempt from taxation; or that they ever paid or tendered any tax; or that the assessment and tax as a whole was unjust or excessive; or that payment of the tax in one sum could work any hardship. They owned all the property, owned it jointly, and without ascribing any reason why they should not contribute their "just share toward the public burthens," yet seek to escape taxation altogether, and that, too, by the aid of a court of equity. Our statutes (§ 24, p. 93, 15th Extra Sess.) provide "that no informality in the above requirements [relative to duties of assessor and of clerk concerning tax roll] shall render any proceedings for collection of taxes illegal," and the provisions would seem fully to meet all of the contentions of plaintiffs in this regard, and Exhibit A would seem to conform to the statutory requirement. (See § 7, p. 225, 16th Sess. 1889.) Appellants are presumed to have had notice of the assessment, and of the publication of the delinquent tax list; they were silent, then, as to alleged informalities, which it was not only their legal

privilege, but their moral duty, to have had corrected by the county board of equalization.   They can yet redeem their property by payment of a just tax, and thus discharge a duty which they owe to the State, and to every other tax-payer.   Therefore they will not be heard to complain in a court of equity.

BLAKE, C. J.—The complaint alleges "that in the year 1889, at the proper time, and as required by law, the plaintiffs made out and delivered to the assessor" of the county of Gallatin, "upon his requisition, a list and statement of all the real and personal property in their possession or under their control in said county, which by law they were required to list for taxation," to wit: The E. ½ of the N. W. ¼ and the E. ½ of the S. W. ¼, and the S. E. ¼ of section 3, township 2 S., of range 5 E.; and also the S. W. ¼ of section 22 in said township; and also fifteen horses, sixteen cattle, and one wagon.

It is further alleged that "the said real estate in said section 3 constituted one distinct parcel of land, and the said real estate in said section 22 constituted another and separate and distinct parcel of land; . . . . that notwithstanding the facts aforesaid, the said assessor did not determine nor fix the true value of either of said parcels of land separately, or of said personal property, or the value of said property in any manner or at all; . . . . that the said assessor, before the first Monday of September of said year of 1889, did make out and deliver to the county clerk of said county a so-called assessment list and roll, but the same did not contain the value of any or either of the several parcels of land or species of property contained in said statement and list or roll. . . . . The said assessor did not separately assess the value of the several tracts and parcels of land above described. . . . .There was no assessed valuation of any of the foregoing described real estate, or any of said personal property, during said year A. D. 1889; and there was no levy of any tax against said property of the plaintiffs, or any thereof, made during the said year of 1889; and no tax became due or payable from the plaintiffs, or either of them, upon any of said property during said year of 1889."

It is further alleged "that said county treasurer did not, during said year of 1889, or at any time, or at all, commence any proceedings to collect the tax claimed to be due from plaintiffs

upon the said personal property listed as aforesaid; nor did he sell or attempt to sell any of said personal property for any tax due or claimed to be due thereon, or on any of said property, for the year 1889. . . . . That thereafter, upon the seventeenth day of February, A. D. 1890, and for twenty days thereafter, Sundays and legal holidays excepted, the said James L. Patterson, as treasurer of said county of Gallatin, without any right or authority, and without having given the notice prescribed by law, offered the said lands, and all thereof, for sale, to pay the taxes, interest, costs of publication, and penalties, which he claimed to be due and owing from the plaintiffs as for taxes upon said property, and delinquent for the year 1889. . . . . No notice of such offering for sale of said lands, and no list of the land and lots subject to sale for taxes, was ever given or published by the said treasurer, stating the amount of tax due on each parcel of land, or any thereof, after adding the lawful penalty and costs of advertising or otherwise, or stating any sum or amount whatever as being due thereon for taxes or otherwise, and no other notice or list was given or published than that contained in" a certain paper hereinafter set forth. That said treasurer, "under and by virtue and authority alone of the proceedings, offer, and notice aforesaid, sold and bid," March 13, 1890, "the whole of said real estate off to and in the name of the said county of Gallatin for the sum of $220.72; and thereafter, on the date last aforesaid, the said treasurer issued to the county of Gallatin a certificate of purchase for the whole of said pieces and parcels of land, . . . . which certificate is now held by said county, and is on file in the office of the clerk and recorder thereof; and that in making said sale and so bidding off said lands the said treasurer did not offer nor sell the same in separate parcels, but altogether, as if the same were only one parcel of land."

It is further alleged "that said lands were not so sold nor bid off for the amount of taxes due or claimed to be due thereon, or due or claimed to be due upon either of said parcels, or for the interest, penalties, and costs thereon, but for a sum equal to the whole amount of taxes claimed" to be due "upon said real estate, and for taxes claimed to be due also upon said personal property for said year 1889, together with the costs and charges and penalties upon the whole amount of said taxes. Said pieces

and parcels of land were not offered for sale or sold by said treasurer for the taxes unpaid or claimed to be unpaid thereon, or for the taxes unpaid or claimed to be unpaid on each of said parcels of land, but for the whole amount of the taxes claimed from these plaintiffs upon all of their property aforesaid, real and personal, for the year 1889; and the sum so demanded by said treasurer for taxes paid upon said lands was greatly in excess of the amount of taxes claimed to be unpaid thereon as aforesaid, including costs and charges aforesaid."

It is further alleged that "at the date of said sale of the said real estate to the said Gallatin County, the same was not subject to sale for any taxes whatever; . . . . that said certificate of sale . . . . was wrongfully and unlawfully issued by said treasurer to said" county; "that the said sale and certificate of sale cast a cloud upon the title of the plaintiffs to the said real estate; . . . . and that, if said cloud is allowed to continue upon the title of said real estate, its value will be greatly depreciated, and the plaintiffs greatly discommoded and damnified thereby, the said real estate being of great value, to wit, of the value of $5,000."

The prayer is that the sale be adjudged void, that the certificate be canceled, and that the treasurer be enjoined from executing any deed to said lands under the sale and certificate of purchase.

The demurrer stated the following grounds: "That said complaint is ambiguous and uncertain in that it cannot be ascertained therefrom what part of said sum of $220.72, taxes, penalty, and costs, is claimed to be excessive as against said lands; . . . . that said complaint does not state facts sufficient to constitute a cause of action." The demurrer was sustained, and the plaintiffs having elected to stand upon their complaint, judgment was entered in favor of the county of Gallatin.

It appears from the complaint that the appellants allege clearly that the portion of the said sum of $220.72 which was claimed to be excessive was the amount which had been included therein by reason of the taxes, penalty, and costs that have been levied upon their personal property. The precise amount thereof is not directly mentioned, but can be ascertained by computation. The entire pleading is "easy of comprehension, and free from reasonable doubt, which is all that is necessary." (*Salmon* v. *Wilson*, 41 Cal. 602; *Applegarth* v. *Dean*, 68 Cal. 491; *Kraner*

v. *Halsey*, 82 Cal. 209.) This cause of the demurrer should have been overruled, and we presume that this was the ruling of the court thereon.

The real controversy before us relates to the proposition that the complaint does not state facts sufficient to constitute a cause of action. It is alleged that Exhibit A "is a true and correct copy of so much of said assessment roll and list as contains the entry of the said real estate and personal property, as made on said assessment roll and list by said assessor." The part which is relevant to this investigation appears in the following form:—

**ASSESSMENT LIST OF GALLATIN COUNTY, MONTANA.**

**FOR THE YEAR A. D. 1889.**

| Names. | Age. | P. O. Address. | No. Acres of Land. | Description. | Value. |
|---|---|---|---|---|---|
| Ward Bros. | 58 61 | Bozeman. | 478 | E. 2 N. W. ¼ E. ½ ½ S. W. ¼ S. E. 4, Sec. 3, S. W. 4, Sec. 22, T. 2 S. R. 5 E. | 4 0 0 0 |

| No. of Horses. | Value. | No. of Cattle. | Value. | No. of Wagons, Carriages, etc. | Value. | Total Amount of Real Property. | Total Amount of Personal Property. | Special Poor and Road Tax. | Total Assessment. |
|---|---|---|---|---|---|---|---|---|---|
| 15 | 6 0 0 | 16 | 3 0 0 | 1 | 5 0 | 4 0 0 0 | 9 5 0 | 4 | 4 9 5 0 |

It seems proper to direct our attention to what is not set forth in the complaint. There is no averment of a tender by the appellants of any sum in payment of any portion of the taxes which was due from them for the year 1889, and it is not claimed that their property was exempt from taxation by virtue of any provision of the Constitution or a statute. Nor is it alleged that the appellants ever sought redress by any appeal to the board of equalization of Gallatin County.

It is maintained that the assessor did not comply with the requirements of this statute. "It shall be the duty of the assessor to determine and fix the true value of all items of property included in such statement, and enter or cause to be entered the same opposite such items, respectively, so that, when completed, such statement shall truly and distinctly set forth . . . . the number of acres of land, giving full description, location, and the value thereof." (Stats. 16th Sess. p. 223, § 5.) The appellants insist that the figures in the foregoing columns of value do not designate dollars or cents, and that the assessment is void.

The first case which we have examined with reference to this question is that of *Lawrence* v. *Fast*, 20 Ill. 339; 71 Am. Dec. 274. A judgment had been entered against delinquent lands for the taxes, and the court said that in no part thereof "does the word 'dollar,' 'cent,' or 'mill' occur, nor any abbreviation, character, or sign representing either of these words, or any other denomination of money." It was held that the use of numerals was insufficient, and that the judgment was fatally defective. Mr. Justice Breese, in a dissenting opinion, said: "It is certain to every ordinary intent that the figures in the proper columns indicated cents or dollars and cents. The most common man would so understand them, and could not be misled by them." The doctrine of the court was followed in *Lane* v. *Bommelmann*, 21 Ill. 147; *Gibson* v. *City of Chicago*, 22 Ill. 567; and *Eppinger* v. *Kirby*, 23 Ill. 523; 76 Am. Dec. 709. The case of *Lawrence* v. *Fast*, *supra*, was approved in *Randolph* v. *Metcalf*, 6 Cold. 400, in which a judgment of condemnation of land was rendered for the non-payment of taxes. In the opinion Mr. Justice Shackelford said: "This question came before the Supreme Court of the United States, reported in *Woods* v.

*Freeman,* 1 Wall. 398, in which it was held, where there was no mark, word, or character on the record of the judgment to indicate the amount of the taxes for which it was rendered against the land, the judgment was void. The facts of that case are very similar to the case under consideration."

We do not so understand the decision in *Woods* v. *Freeman, supra.* Mr. Justice Davis in the opinion said: "In the construction of local statutes affecting the titles to real estate this court recognizes the binding force of the interpretation given by the highest judicial tribunal of a State. This question has been expressly decided by the Supreme Court of Illinois." The court then cited *Lawrence* v. *Fast, supra,* and *Lane* v. *Bommelmann, supra,* and held accordingly. The opinion proceeds no further.

The Supreme Court of California, in *Hurlbutt* v. *Butenop,* 27 Cal. 50, held that figures in an assessment roll, without any statement whether they stand for cents, dollars, or eagles, do not fix any valuation to property therein described. Similar views have been repeatedly announced by that tribunal. (*Braly* v. *Seaman,* 30 Cal. 610; *People* v. *San Francisco Savings Union,* 31 Cal. 132; *People* v. *Hastings,* 34 Cal. 571; *Garwood* v. *Hastings,* 38 Cal. 216. See, also, *In re Rector etc. of Church of the Holy Sepulchre,* 61 How. Pr. 315.) The Supreme Court of Minnesota, in *Tidd* v. *Rines,* 26 Minn. 201, in which the validity of a tax judgment was involved, cited with approval these decisions of the courts of Illinois and California.

There is eminent authority upon the other side of the contention. In *Cahoon* v. *Coe,* 52 N. H. 518, the court expressed its concurrence in the dissenting opinion of Mr. Justice Breese, *supra,* and said: "We are satisfied that the figures, taken in the connection in which they stand, must be understood to mean dollars or cents, or dollars and cents, the ordinary denominations of our money." In *State* v. *Eureka Con. Min. Co.* 8 Nev. 15, the court said: "Upon principle we think the opinion of Judge Breese presents the more reasonable and common sense view of the question, especially as applied to the facts of this case." It is stated in the opinion by Mr. Justice Garber that "the plaintiff offered as evidence portions of the original and delinquent quarterly assessment rolls. The defendant

objected to their introduction on the ground 'that there are no dollar marks placed to the figures and numbers purporting to indicate the amount of the tax due or assessed, or to any figures or numbers therein, and that it has no other marks indicating what is meant by those figures or numbers.' The evidence was received and an exception taken." (See, also, *Bird* v. *Perkins*, 33 Mich. 28.)

The Supreme Court in Illinois in the later cases of *Chickering* v. *Faile*, 38 Ill. 342, and *Elston* v. *Kennicott*, 46 Ill. 187, has explained fully its position, and pointed out distinctly the grounds on which *Lawrence* v. *Fast, supra*, is based. Chief Justice Breese in the opinion in *Elston* v. *Kennicott, supra*, said: "The plea for his failure to pay the taxes for that year is that the taxes were not legally assessed, the assessment roll not containing the dollar mark. . . . . This very question came before this court in the case of *Chickering* v. *Faile* [*supra*], wherein it was held that the want of the dollar mark in the assessment roll, to designate the amount of the valuation or the taxes, would not render the assessment or the collector's warrant invalid and illegal. It was further said, we would not apply the want of a word or character to the numerals to indicate the sum of taxes due as a defect to anything prior to the application of the collector for a judgment against delinquent lands, and would not even apply it to the judgment were it not that the judgment must find the sum for which it is rendered, and that this rule is inflexible. To all of the proceedings prior to the judgment for taxes all persons know what the numerals represent, and act upon them accordingly. . . . . This want of the dollar mark is no defect to any matter or thing prior to the application of the collector for a judgment against the delinquent lands. . . . . Who is to say, at this stage of the proceeding, that the assessment is illegal for the want of this mark? He who shall take the risk, takes it at his peril. It is sufficient for the tax-payer to know his property is assessed for taxation in a mode he well understands. His property is charged with a tax which he must discharge. . . . . On this point we still hold, as this court has constantly held, that a judgment for taxes, in which the amount of the taxes does not appear either by the use of apt words or the recognized dollar mark, cannot be sustained.

This rule is founded, as we have already observed, on the necessity that a judgment should be for a definite sum, so expressed as not to be left to conjecture. But when it is sought to invalidate the payment of taxes on analogous grounds, other principles are to be considered." We are of the opinion that the most reasonable conclusion upon these facts and the weight of authority are opposed to the contention of the appellants, and that the omission of the dollar mark, when the position of the figures, the value of the property, or some other fact indicates the meaning of the numerals in said exhibit, is an informality which does not vitiate the assessment. (Stats. 15th Extra Sess. p. 92, § 24.) Notwithstanding this holding, we desire to add that we do not sanction this careless method of transacting business of such public importance. Our statutes do not contemplate the entering of a judgment or similar proceedings which have been prescribed in Illinois or other States, and the conditions of this case are analogous to them. The word "dollar" is used in the certificate of sale, which appears as an exhibit of the complaint.

It is claimed that the said parcels of land were not valued separately, but in a lump, and that, therefore, the assessment is a nullity. If this objection were tenable, the appellants have not alleged the facts which are essential to enable them to take advantage thereof.

In *Cadwalder* v. *Nash*, 73 Cal. 43, it is adjudged that " where the owner himself returns the property as a whole he cannot be heard to complain that it has been improperly listed in that manner." While the complaint alleges that the real estate consisted of two distinct parcels, there is no averment that the appellants so returned the same in their "list and statement" to the assessor.

In the recent case of *Dear* v. *Varnum*, 80 Cal. 86, it is said: "The complaint does not . . . . disclose the contents of the written statement furnished by plaintiff to the assessor, nor allege that the assessment did not conform, in its description of property, to the description contained in the statement furnished by plaintiff, nor show wherein it differed therefrom. Assuming the statement furnished to have been such as the law required, it must be presumed, in support of the assessment, unless the

contrary is alleged, that the description in the assessment was identical with that contained in the statement." It can be presumed under the authorities that the assessor of Gallatin County adopted the description of the land which had been prepared by the appellants. (*Albany Brewing Co.* v. *Meriden,* 48 Conn. 243.)

The principles which were laid down in *Northern Pac. R. R. Co.* v. *Patterson,* 10 Mont. 90, are applicable, and the appellants could have obtained an adequate remedy on account of these irregularities by appearing before the board for the correction of the assessment roll. The following section of the statutes should be considered upon this branch of the appeal: "An entry is required to be made upon the tax list showing what it is, and for what county and the year it is; and the county clerk shall attach to the list his warrant, under his hand and official seal, in general terms, requiring the treasurer to collect the tax therein levied according to law; and no informality in the above requirements shall render any proceedings for the collection of taxes illegal, and such list shall be full and sufficient authority for the treasurer to collect all taxes contained therein." (Stats. 15th Extra Sess. § 24.) We hold there was a valid assessment of the property of the appellants, and that the same was subject to taxation by virtue of the laws in force during the year 1889.

It is further declared that "every tax levied under the provisions of this act is hereby made a lien against any and all the property assessed, and such liens shall attach at the time of such assessment, and shall not be satisfied or removed until such taxes are paid." (Stats. 15th Extra Sess. p. 83, § 2.) The complaint alleges that no tax was levied against the property of the appellants during the year 1889, and the brief asserts that there was no jurisdiction in the board of county commissioners to act in this matter in the absence of a proper valuation and assessment. This allegation of the appellants depends upon propositions which we have determined to be unsound.

The next inquiry relates to the authority of the county treasurer of Gallatin County to sell the real estate without a resort to other remedies. The statute provides that, "if any such taxpayer shall fail or refuse to pay the taxes against him on or before the last day of December following the levy thereof, ten

per cent of such taxes shall be added thereto, and collected as a portion of said taxes, and it shall be the duty of the tax collector, immediately after the first day of January, to seize any personal property belonging to, or which may have been assessed to, any tax-payer who shall then be delinquent, and sell the same as provided by law." (Stats. 16th Sess. p. 225, § 9.) "In cases where sufficient personal property liable to seizure cannot be found to pay the tax assessed against any person . . . . the treasurer may sue for and collect such tax by attachment, garnishment, or otherwise." (Stats. 15th Extra Sess. p. 93, § 28.) The last section confides in the officer the power of commencing and maintaining a civil action, but its exercise has been made a subject of discretion. Could the tax collector of Gallatin County proceed rightfully against the real estate of the appellants after his failure to seize and sell their personal property? The authorities in the negative are controlled by statutes which are unlike the provisions before us. The legislatures in some States have declared in express terms that the land of the delinquent tax-payer shall not be sold until his personal property has been seized and disposed of, or there has been a return by some officer that the party had no goods which could be found. No requirements of this nature are embodied in our laws, and no consequences affecting the owners of property attach to the omission of the tax collector to discharge his duty in this regard. Mr. Cooley, in his work on Taxation, says: "Under some tax laws the same officer who collects the taxes is empowered to make sale of the lands of delinquents. In such cases no return is required, though the filing of some official document showing the delinquency is sometimes provided for. Such a document takes the place of a collector's return, and will be governed by the rules above laid down. If none is required by law, the collector is allowed to proceed and sell lands on his own knowledge of the delinquency." (p. 309.) Under the statute in effect in the year 1889 the county treasurer was the collector of taxes in Gallatin County, and "every tax" which was due from the appellants was a lien upon their real property. The legislature has prescribed a co-ordinate or cumulative remedy by clothing the officer with the power to seize and sell the personal property of delinquent tax-payers, but we do

not think it was the intention that the land which had been assessed should not be sold until this authority had been exercised. (*State* v. *Newark,* 42 N. J. L. 38; *Thompson* v. *Roe,* 22 How. 422; *Smith* v. *Jones,* 40 Ga. 39; *Plant* v. *Eichberg,* 65 Ga. 64.)

The form of the notice of the sale of the real estate by the treasurer is in accordance with the statute. (Stats. 15th Extra Sess. p. 94, § 30.) "The county treasurer shall, on or before the fifteenth day of January in each year, make out and publish a list of all lands . . . . subject to sale, describing such lands . . . . as the same are described on the tax roll. . . . ." The appellants contend that each parcel of land is liable solely for the tax which had been assessed against it, and that this amount shall be stated in the notice. In the case at bar, however, under conditions for which the appellants are responsible, the lands comprise one tract for the purposes of taxation. When the provisions of the law relating to the revenue are construed together, it is clear to me that all the taxes which have been assessed against the personal property of the appellants can be collected by the sale of their real estate, but a majority of the court is of a contrary opinion. It is difficult to reconcile the provisions of this statute with the section *supra,* declaring the extent and duration of a lien for taxes against "any and all the property described." The taxes have not been paid, and the lien against the property of the appellants has not been extinguished. The language of the statute concerning the mode of collecting delinquent taxes by the sale of real property should be interpreted to enforce, if possible, the entire obligation of the citizen to the State. The objection that there is no denomination of dollars or cents, according to the notice, must be overruled for the foregoing reasons.

The treasurer bid off the lands for the county of Gallatin, and issued a certificate of purchase, and apparently followed the statute. (Stats. 15th Extra Sess. p. 96, § 36.) The appellants, in their brief, attack the form of this document, but this subject cannot be inquired into upon this appeal. If one of the appellants offered to redeem any part of the property therein described, and tendered a sufficient sum of money, the court would give an ample remedy. An examination of the whole record

would fix this amount, and the form of the certificate would not be an obstacle.   The complaint does not present any issue respecting the regularity of the certificate, or its legal effect, but alleges that the treasurer had no right to make any instrument of this character.

We cite again the case of *Railroad Co.* v. *Patterson, supra,* and hold that the appellants cannot invoke the aid of an injunction, when they do not offer to do equity by tendering any part of the taxes which they owe to the county of Gallatin and the State.   The complaint does not state facts sufficient to constitute a cause of action.

It is therefore ordered and adjudged that the judgment be affirmed.

HARWOOD, J. (*concurring*). — One of the grounds upon which appellants insist that the assessment and levy of the tax on the lands in question, and the sale thereof to enforce payment of said tax, is void, is because two distinct and separate parcels of land were assessed and valued for taxation in one item and as one parcel; and that afterwards, in all the proceedings for enforcing said tax, the two parcels of land were treated as one.

It appears from the allegations of the complaint that plaintiffs made and delivered to the assessor a list of all their real and personal property, in which list they returned a description of said lands.   It is not directly alleged in said complaint that plaintiffs described and stated the value of said real estate in one item as one parcel of land; but that, I think, is the fair inference to be gathered from paragraph 4 of the complaint. It is nowhere alleged that plaintiffs returned their real estate in separate parcels, or with separate valuations, which ought to have been distinctly alleged, if true, in order to form a basis for asserting the proposition they contend for, that said lands should have been assessed and the lien thereon for the tax levied enforced against the same by separate parcels; and, as before remarked, the inference we draw from the allegations of the complaint is that the land was returned by plaintiffs, and valued as a parcel of " 478 acres of land."   This was asserted by respondent in his brief and argument as the allegation of the plaintiffs' complaint, which proposition was not denied by

appellants in the treatment of the question before this court. Such return of said real estate in bulk appears to have been adopted by the assessor and other officers of that county; and in the assessment, levy, and other proceedings had in reference to the tax thereon for that year said lands were treated as one parcel. No effort was made by appellants, by appearance before the board of equalization, to have each parcel of said land separately assessed and valued; and, having been the author of such assessment, and introduced into it the irregularity complained of, we think, applying the maxim that one should not be allowed to take advantage of his own wrong, plaintiffs ought not to be heard to assert such irregularity as a ground for avoiding said tax.

But, as a general proposition of law, I do not agree that, under the provisions of the statute regulating taxation at the time in question, every tax levied, whether on the specific parcel of real property or not, became a direct lien, generally or convertibly, to be applied on any or every parcel of real estate assessed to the same party. I think the provisions of the statute contemplated and provided for the assessment of each distinct parcel of real estate separately, and for a direct lien on each parcel for the tax levied thereon. Section 2 of said act (Extra Sess. Laws, 1887, p. 83) provides: "Every tax levied under the provisions of this act is hereby made a lien against any and all the property assessed, and such lien shall attach at the time of such assessment, and shall not be satisfied or removed until such taxes are paid." If this provision, considered alone, leaves any doubt as to the point in question, it is made clear by other provisions of the same act, when all are looked at and construed together. Section 13 provides that, as to real estate assessment, the county clerk shall set forth in a book to be "known as the 'Real Property Assessment Book,' lists of all lands in his county subject to taxation, showing the names of the owners, if known. If the names of the owners be unknown, it shall be so stated opposite the description of *each tract or parcel of land by township, range, section, and subdivision thereof, or numbers.*" By the provisions of section 16, the assessment list of each individual is required to contain "his or her or their lands, to be designated by sub-

division, township, range, section, and any division or part of sections, and, where such part is not a government division or subdivision, then some other description to define it; and his town lots, naming the town in which they are situate and their proper description by number and block, or otherwise, according to the system of numbering in the town." Section 25 provides that, "immediately after the assessment roll is corrected, the county clerk shall make out an abstract thereof, containing the whole amount *of each species of property*, and the *value of the same*, together with the total valuation of all property assessed." Section 30 provides that "the county treasurer shall . . . . make out and publish a list of all lands and town lots subject to sale, describing such lands and town lots as the same are described in the tax roll, with the accompanying notice, stating that so much of *each tract of land or town lot described in said list* as may be necessary for that purpose will . . . . be sold by him at public auction . . . . *for the taxes and charges thereon.*" The same section provides for notice "to all persons, companies, or corporations who have or claim any estate, right, or title, or interest in, or claim to, or lien upon, any of the *several pieces or parcels of land*" in the list which will be sold at public auction, to procure the amount of delinquent taxes due thereon; in which notice is required to be inserted "a description of *each parcel of land, as the same appears in the tax roll,* stating also the *total taxes due on each parcel,* adding penalty and cost of advertising." Section 35 provides that when the last publication of said notice shall have been made according to law "the notice shall be deemed to have been served, and the treasurer shall have acquired full and complete jurisdiction to enforce against *each piece or parcel of land in said published list described* the *taxes accrued, penalties, and costs upon it,* then delinquent." Section 37 provides that "the person who offers to pay the amount due *on any parcel of land* for the smallest portion of the same is to be considered the highest bidder," etc.; and it is provided by section 39 that the purchaser shall receive from the county treasurer making such sale a certificate of the purchase, showing "how much and what part of such tract or lot was sold, and stating the amount of each kind of tax, interest, and cost *for each tract or lot* for

which the same was sold." Section 41 provides for redemption at any time before the expiration of three years from the date of sale, by "payment to the treasurer of the proper county, to be held by him subject to the order of the purchaser, of *the amount for which the same was sold.*"

I think these provisions of said act make plain the proposition that the legislature intended that each distinct parcel of land should be assessed separately, and separately charged with a direct lien for the taxes levied thereon, and may be redeemed from that lien by payment of the tax levied on such parcel according to the listing and assessment thereof. This is shown by the many provisions of the statute cited. It is a just provision, too, because others besides the legal owner may have interests in a parcel of land, which they wish to protect by payment of the tax before sale, or redemption of the parcel after sale; and, under the contrary view, such interests could not be protected without payment of all taxes assessed against all other property of the delinquent. It may be further observed that a delinquent, unable to pay the tax on all the lands assessed to him, could not save one parcel from sale, or redeem one parcel, without payment of the whole tax, unless the provisions of the statute which we have cited are substantially followed. But while it is the right of the owner to have his real estate assessed and taxed by separate parcels, these provisions of the statute and the rights which flow therefrom ought to be applied with reason in connection with the subject under regulation and the other provisions of the act. When the owner returns lists of his property under the provision requiring him to make and return the same, this action on his part in a manner makes him a party to the listing and assessment of such land. And, moreover, the law has provided a board of equalization clothed with power to correct such irregularities, to whom the owner may apply for such correction; and we think the holding that he cannot ignore these provisions which offer a remedy, to which he should resort before he can appeal to the court for relief, is the proper ruling.

In the case at bar it appears from the complaint that the land in question was sold for an item of tax levied on personal property returned and valued at $950. The land sold, I think, was

not chargeable by way of direct lien for said personalty tax, to be enforced by sale of said real estate as for tax levied thereon. The amount of the tax on said personal property was easily ascertainable. The appellants could have ascertained the same and tendered payment of the amount properly assessed upon said lands, with interest, penalty, and costs accrued, and demanded a certificate of redemption on payment thereof, before commencement of this action. (*Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146; *Northern Pac. R. R. Co.* v. *Patterson,* 10 Mont. 90.) If that had been done, and redemption had not been allowed by the proper officers, plaintiffs would, upon proper showing of the facts, have been entitled to relief to the extent of compelling the allowance of redemption by cancellation of the certificate of the sale, or other proper remedy, on payment of the amount for which said lands are properly charged. But such facts are not shown. Plaintiffs proceeded upon the theory that they could avoid the whole tax, and have directed the allegation of the complaint to that end; and careful consideration leads me to the conclusion that the showing made by the complaint is insufficient to sustain their action.

I therefore, with these modifications of the views expressed in the opinion of Chief Justice BLAKE, concur in the conclusion that the judgment of the trial court should be affirmed.

DE WITT, J.—I concur in the observations of Mr. Justice HARWOOD, and the affirmance of the judgment.